IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BALA CITY LINE, LLC, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.:   16-cv-4249 |
| | : | |
| OHIO SECURITY INSURANCE | : | |
| COMPANY, | : | |
| Defendants. | : | |

## MEMORANDUM

**SITARSKI, M.J.**                                                                                                  August 9, 2017

Presently pending before the Court is Plaintiff's Second Motion to Compel Full and Complete Discovery Responses, (Pl.'s Mot. to Compel, ECF No. 24), and the parties' responses thereto, (Def.'s Resp., ECF No. 27; Pl.'s Letter Reply, ECF No. 28). For the reasons that follow, Plaintiff's motion shall be **GRANTED IN PART** and **DENIED IN PART**.

### I.     FACTUAL AND PROCEDURAL HISTORY

Because the Court writes primarily for the parties, the Court recites only the facts relevant to its consideration of this motion.

On March 13, 2014, a fire occurred at a restaurant owned and operated by Bala City Line ("Plaintiff"). (Pl.'s Mem. of Law 1, ECF No. 24-2). At the time of the fire, the restaurant was insured with Ohio Security Insurance Company ("Defendant"). (*Id.*). Following the fire, the parties began a lengthy claim adjustment process that lasted through early April, 2016. (Def.'s Resp. 2-5, ECF No. 27). Over the course of the two year process, Defendant made payments for Plaintiff's fire loss totaling $1,031,396. (*Id.* at 5).

On August 5, 2016, Plaintiff instituted this action by filing a Complaint, alleging that Ohio Security had handled Plaintiff's fire loss claim in bad faith. (*Id.*; Compl., ECF No. 1). The parties then engaged in written discovery. (Def.'s Resp. 5, ECF No. 27). Defendant responded to Plaintiff's document requests and interrogatories (Pl.'s Mem. of Law 6, ECF No. 24-2; Def.'s Resp. 6, ECF No. 27); Plaintiff filed its first Motion to Compel Full and Complete Discovery Responses on March 29, 2017. (ECF No. 14). On April 17, 2017, the Honorable C. Darnell Jones, II, referred Plaintiff's Motion to Compel, along with all responses and replies, to this Court for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (EFC No. 16).

On April 27, 2017, this Court denied without prejudice Plaintiff's first Motion to Compel Discovery on the grounds that Plaintiff failed to comply with Federal Rule of Civil Procedure 37(a)(1) and Local Rule 26.1(f), and also failed to explain why relief was appropriate. (ECF No. 19). On June 7, 2017, Plaintiff filed a second Motion to Compel Full and Complete Discovery Responses. (ECF No. 24). Defendant filed a response in opposition to Plaintiff's second Motion to Compel on June 28, 2017, (ECF No. 27), and Plaintiff submitted a letter in response to Defendant's opposition brief on July 10, 2017. (ECF No. 28).

## II.     LEGAL STANDARD

The Federal Courts have broad discretion to manage discovery. *Sempier v. Johnson*, 45 F.3d 724, 737 (3d Cir. 1995). The Federal Rules of Civil Procedure allow parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information within the scope of discovery does not need to be admissible at trial to be discoverable. *Id.* Additionally, "[w]hile the permissible scope of discovery is broad, it is not without limits," and "[p]arties may not 'simply engage in a fishing expedition.'" *United States v. Merck & Co.*, No. 10-4374, 2016 WL 7042203, at *2 (E.D. Pa. Feb. 5, 2016) (*quoting Essex Ins. Co. v. RMJC, Inc.*, No. 01-4049, 2008 WL 2757862, at *2 (E.D. Pa. July 16, 2008)).

Pursuant to Rule 37, a party who has received evasive or incomplete answers to discovery requests may move for an order compelling discovery. *See* Fed. R. Civ. P. 37(a)(1), (4). A party filing a motion to compel "bears the initial burden of showing that the requested discovery is relevant." *Plexicoat America, LLC v. PPG Architectural Finishes, Inc.*, No. 13-CV-3887, 2015 WL 171831, at *2 (E.D. Pa. Jan. 14, 2015) (*citing Morrison v. Philadelphia Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001)). The burden then shifts to the party opposing discovery to articulate why discovery should be withheld. *Id.* "The party resisting production must demonstrate to the court 'that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Plexicoat America*, 2015 WL 171831, at *2 (quoting *Young v. Lukens Steel Co.*, No. CIV. A. 92-6490, 1994 WL 45156, at *2 (E.D. Pa. Feb. 10, 1994)).

### III. DISCUSSION

Plaintiff seeks four things in his second Motion to Compel:

(1) full and complete answers to all document requests by noting what Bates stamped documents correspond to each document request;

(2) an unredacted set of the documents produced including all information identified in defendant's Redaction Log as reserve information and settlement authority information;

(3) the portion of the claims manual regarding any portion of the Policy relied upon by defendant in making the coverage decision on plaintiff's claims; and

(4) full and complete responses to document requests 1, 2, 7-11, 14-21, 23-26, and 28-37.

(Pl.'s Mot. to Compel, ECF No. 24; Order, ECF No. 24-1). For the reasons that follow, Plaintiff's Motion will be granted in part, and denied in part.

**A.      Plaintiff's Request for Document Production that Complies with Rule 34**

Plaintiff argues that Defendant's production of 3,293 documents did not comply with Rule 34(b) because Defendant did not label its documents to correspond to Plaintiff's requests, and did not produce the documents as kept in the usual course of business. (Pl.'s Mem. of Law 8-9, 11, ECF No. 24-2; Pl.'s Letter Reply 1, ECF No. 28) ("Defendant merely provided voluminous records in unsearchable pdf format without any discernable organization, categorization or labeling of any kind."). In support of its argument, Plaintiff cites several cases that discuss the underlying purposes of Rule 34(b), such as the Rule's aim to foreclose producing parties from dumping huge quantities of documents that mix unrequested and/or nonresponsive documents in with those actually requested. (*See* Pl.'s Mem. of Law 8-10) (citing *Sparton Corp. v. United States*, 77 Fed. Cl. 10, 16 (2007); *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 409-10 (S.D.N.Y. 2009); *Pass & Seymour, Inc. v. Hubbell, Inc.*, 255 F.R.D. 331, 333-34 (N.D.N.Y. 2008)).

4

Defendant acknowledges that Rule 34 aims to stop the producing party "from attempting to hide a needle in a haystack." *Williams v. Taser Int'l, Inc.*, No. 06-CV-0051, 2006 WL 1835437, at *7 (N.D. Ga. June 30, 1006). However, Defendant contends that the approximately 3,200 documents it produced is not the large number of documents that Rule 34 aims to foreclose. Defendant correctly notes that the out-of-Circuit cases Plaintiff cited involved much larger document productions. (Def.'s Resp. 8-9, ECF No. 27) (citing *Collins*, 256 F.R.D. at 407 (production of 1.7 million documents); *Williams*, 2006 WL 1835437, at *5-7 (production of 200,000 documents); *Hubbell, Inc.*, 255 F.R.D. at 332 (production of more than 400,000 documents)). Defendant also points out that Plaintiff has not identified any nonresponsive documents within the 3,200 documents produced by Defendant in this case. (*Id.* at 8). Defendant contends that all the documents it produced are responsive to Plaintiff's request, as it produced its entire file – other than privileged information – regarding Plaintiff's insurance policy. (*Id.* at 8-9).

Under Rule 34, "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). Courts in this district have consistently found, however, that the producing party is not "obligated to organize documents produced to correspond with the categories identified in plaintiff's discovery requests." *Karakozova v. Tr. of Univ. of Pennsylvania*, No. 09-02564, 2011 WL 238711, at *2 (E.D. Pa. Jan. 21, 2011); *see also Parks, LLC v. Tyson Foods, Inc.*, No. 5:15-cv-00946, 2015 WL 5042918, at *2 (E.D. Pa. Aug. 26, 2015); *Directory Dividends, Inc. v. SBC Commc'ns, Inc.*, No. 01-CV-1974, 2003 WL 23208804, at *1 (E.D. Pa. Dec. 31, 2003) (finding that producing party did not have to "indicate for each produced document the document request to which it is responsive"). Rather, the producing

party has the choice to either produce documents as they are kept in the ordinary course of business *or* to label them to correspond with the request categories. *Id.* (emphasis added). Therefore, ". . . labeling is not required where the party otherwise complies with the rule by producing the documents as they are kept in the normal course of business." *Le v. City of Wilmington*, 480 F. App'x 678, 686-87 (3d Cir. 2012).

I accept Defendant's representation that the documents were produced as kept in the usual course of business. Defendant offers some narrative explanation of what was produced, and how it was produced. (Def.'s Resp. 8-9, ECF No. 27) (other than privileged information, Defendant provided its "full file" regarding Plaintiff's policy, the bulk of which included emails with relevant header information, as well as consecutively numbered claims notes). Defendant will not be required to label the documents to correspond to Plaintiff's requests. Defendant has sufficiently described its document production as containing emails, claims notes, and correspondence—all of which are pieces of the entire file that Plaintiff requested. Plaintiff's assertion -- that Defendant has not produced its documents as kept in the usual course of business -- is devoid of any particularized factual basis for this claim. I find that Defendant's document production complies with Rule 34(b), and I accordingly deny Plaintiff's request for relief on this issue. *Cf. Karakozova*, 2011 WL 238711, at *2 ("Plaintiff also asserts that the documents produced by defendant were not sufficiently organized . . . . Defendant represents that its documents have been produced as they are kept in the usual course of business. Absent evidence to the contrary, I find that defendant has fulfilled its obligation to plaintiff . . . .").

B. **Plaintiff's Request for Discovery of Reserve and Settlement Authority Information**

Plaintiff argues that "Defendant impermissibly redacted portions of over 200 pages regarding reserve information and settlement authority information."[1] (Pl.'s Mem. of Law 11, ECF No. 24-2). Plaintiff contends that the reserve information may be relevant "pursuant to the factual timeline of the case." (*Id*. at 12). Defendant responds by arguing that reserve information generally is not relevant in a bad faith claim, and that Plaintiff has not provided a reason why Defendant's loss reserves or settlement authority information would be relevant in this case. Defendant points out that it paid 92.5 percent of its policy limits for building and personal property losses – for which Plaintiff signed a release – and that the business income claim was submitted to an appraisal process that "resulted in 'a good number' for the Plaintiff." (Def.'s Resp. 13-14, ECF No. 27). Accordingly, Defendant contends that "the amounts Ohio Security paid cannot be the subject of Plaintiff's claim, as those amounts were confirmed by the binding release and appraisal process. . . ." (*Id.* at 14).

Courts in the Third Circuit appear somewhat split on the issue of whether reserve information is relevant to bad faith insurance claims. *See Borgia v. State Farm Mut. Auto Ins. Co.*, No. 14-3149, 2014 WL 4375643, at *4 n.5 (E.D. Pa. Sept. 3, 2014); *compare Mirarchi v. Seneca Specialty Ins. Co.*, No. 10-CV-3617, 2011 WL 2982401, at *2 (E.D. Pa. July 22, 2011) (finding that some of the reserve information might be relevant to a bad faith claim) *and North River Ins. Co. v. Greater N.Y Mut. Ins. Co.*, 872 F.Supp. 1411, 1412 (E.D. Pa. 1995) (finding reserve amount relevant to whether insurance company acted in bad faith with regards to timing of payment), *with Fidelity and Deposit co. of Maryland v. McCulloch*, 168 F.R.D. 516, 525 (E.D.

---

[1] "A loss reserve, sometimes called a claim reserve or case reserve, is 'the insurer's own estimate of the amount which the insurer could be required to pay on a given claim.'" *Mirarchi*, 2011 WL 2982401, at *2 (quoting 17A Couch on Ins. § 251:29).

Pa. 1996) (finding that reserve information would not be relevant or helpful to plaintiff's bad faith claim).

Both Plaintiff and Defendant discuss the District Court and Third Circuit decisions in *Mirarchi*, focusing on different aspects of the decisions. (Pl.'s Mem. of Law 11-12, ECF No. 24-2; Def.'s Resp. 12-13, ECF No. 27). Plaintiff requests that this Court allow the discovery of reserve and settlement authority information; alternatively, Plaintiff asks that this Court follow the District Court's approach in *Mirarchi* and conduct an *in camera* inspection of the documents. (Pl.'s Mem. of Law 12, ECF No. 24-2); *see also Mirarchi*, 2011 WL 2982401, at *3 (finding reserve information may be relevant to a bad faith claim and ordering production of reserve information for *in camera* inspection "to the extent that those documents contain information other than specific amounts set for loss reserves"). Defendant focuses instead on the Third Circuit's holding that, after the District Court conducted an *in camera* inspection, the District Court properly deemed the reserve information not relevant to the bad faith claim. (*Id.* at 12-13); *Mirarchi v. Seneca Specialty Ins. Co.*, 564 F. App'x 652, 655 (3d Cir. 2014) (agreeing with the District Court's conclusion that "the loss reserve figures did not represent 'an evaluation of coverage based upon a thorough factual and legal consideration' and hence were irrelevant and not discoverable."). Defendant finds it significant that after the District Court conducted *in camera* inspection, it found that the reserve information was irrelevant, and the Third Circuit upheld that finding. (Def.'s Resp. 13, ECF No. 27); *see also Mirarchi v. Seneca Specialty Ins. Co.*, No. 10-3617, 2013 WL 1187065, at *7 (E.D. Pa. Mar. 22, 2013), *aff'd*, 564 F. App'x 652 (3d Cir. 2014) .

I disagree with Defendant's argument that just because the District Court in *Mirarchi* eventually found the reserve information irrelevant after the *in camera* inspection, Defendant's

8

loss information is necessarily irrelevant to this bad faith claim. *See, e.g.*, *Borgia*, 2014 WL 4375643, at *4 n.5 (finding reserve information relevant to the plaintiff's bad faith insurance claim after an *in camera* review). Moreover, contrary to Defendant's assertion, the claims asserted by Plaintiff in this case go beyond the valuation of the claim. (*See* Compl. at ¶ 20, ECF No. 1; Pl.'s Mem. of Law 3, ECF No. 24-2) ("Defendant failed to properly investigate the claim, failed to timely appraise [Plaintiff] of its investigation . . . ."); (Compl. at ¶ 42; *see also* Pl.'s Mem. of Law 4) ("Defendant knowingly delayed paying the claims . . . ."). The *Mirarchi* court ordered *in camera* inspection of the loss reserves "to the extent that those documents contain information *other than* specific amounts set for loss reserves." *Mirarchi*, 2011 WL 2982401, at *3 (emphasis added). I will do the same. As Plaintiff suggests, the reserve information *may* be relevant to Plaintiff's bad faith claim based on the timeline of this case. For instance, Plaintiff alleges that Defendant insisted on a release before issuing payments because Defendant knew it was offering less than what it owed; that Defendant knowingly delayed the payment of claims to save money and to injure Plaintiff; and that the release is invalid. (Compl. ¶¶ 41-43); *see North River*, 872 F. Supp. at 1412 (finding reserve information relevant to whether insurer acted in bad faith in not settling case within policy limits before trial). Accordingly, to the extent employees or agents of the company discussed the value of Plaintiff's claim or other factual information regarding the claim in connection with setting the reserves, such information may be relevant. *See Mirarchi*, 2011 WL 2982401, at *3.

As such, I will grant Plaintiff partial relief as to this issue. Defendant shall produce unredacted copies of the reserve and settlement authority information to the Court for *in camera* inspection. Defendant shall produce such documents within ten days of today's date.

### C. Plaintiff's Request for Discovery of Defendant's Claims Manuals

Plaintiff's third argument is that the relevant portions of Defendant's claims manuals are discoverable because they will help show whether Defendant followed its policies in regards to the manner and timing of payment. (Pl.'s Mem. of Law 14, ECF No. 24-2). Plaintiff's document requests seeks: "[t]he portion of the claims manual regarding any portion of the Policy relied upon by you in making a coverage decision on plaintiff's claim." (*Id.* at 13). Defendant's main contention with this request is that "Plaintiff's purported claim concerns the adjustment and payment of Plaintiff's claim, *not the coverage of that claim*." (Def.'s Resp. 14, ECF No. 27). Defendant further contends that its payments were made in a timely manner, noting that it paid Plaintiff over $1,000,000 for the fire loss. (*Id.* at 15). Defendant also argues that portions of a claims manual are only relevant in bad faith insurance cases that involve a denial of a claim, citing *McCrink v. Peoples Benefit Line Ins. Co.*, No. 04-1068, 2004 WL 2743420 (E.D. Pa. Nov. 29, 2004). (*Id.*). Plaintiff replies that *McCrink*'s holding was not limited to bad faith claims involving a denial of coverage. (Pl.'s Reply Letter 2, ECF No. 28).

Courts in this District have typically found that information contained in claims manuals is discoverable to the extent that it concerns employee procedures for processing claims. *See McCrink v. Peoples Benefit Life Ins. Co.*, No. 04-CV-01068, 2004 WL 2743420, at *8 (E.D. Pa. Nov. 29, 2004) (". . . it is well-settled that manuals and other training materials are relevant in bad faith insurance litigation where they contain instructions concerning procedures used by employees in processing claims."); *Robertson v. Allstate Ins. Co.*, No. Civ. A. 98-4909, 1999 WL 179754, at *6 (E.D. Pa. Mar. 10, 1999) ("[i]nformation contained in the manuals is relevant" because the employees' failure to follow standards "is probative evidence for plaintiff to

demonstrate bad faith") (citation and quotation marks omitted); *Kaufman v. Nationwide Mut. Ins. Co.*, No. Civ. A. 97-1114, 1997 WL 703175, at *2 (E.D. Pa. Nov. 12, 1997).[2]

I agree with Defendant that the language in Plaintiff's request is overly broad, as it goes further than the bad faith claim asserted here, *see Bell v. Allstate Ins. Co.*, No. Civ. A. 03-4482, 2004 WL 1240627, at *3 (E.D. Pa. June 3, 2004) (finding that a request for all claims manuals regarding claims processing was too broad); however, I do not agree with Defendant that the holding in *McCrink* was limited to cases that involved a denial of coverage. Courts within this district have found that limited portions of claims manuals are relevant in bad faith insurance cases.

I therefore limit Plaintiff's request to include only portions of the claims manuals that discuss policies relating to valuation of claims, and the timing of claims payments. *Cf. Bell*, 2004 WL 1240627, at *3 (allowing document request that addressed plaintiff's specific issue, while limiting an overly broad request). I will grant Plaintiff partial relief as to this issue, and order Defendant to produce this limited information.

### D. Plaintiff's Request for Full and Complete Document Production

Plaintiff did not separately address the fourth issue, in which Plaintiff seeks an Order compelling "full and complete responses to document requests 1, 2, 7-11, 14-21, 23-26, and 28-37." (*See* Pl.'s Mem. of Law 11, ECF No. 24-2). Defendant correctly points out that Plaintiff has not separately briefed this issue, (Def.'s Resp. 16, ECF No. 27), and states that it is "double-

---

[2] This Court notes that in *Garvey v. National Grange Mut. Ins. Co.*, 167 F.R.D. 391, 396 (E.D. Pa. 1996), the court did not allow discovery of claims manuals. That decision has since been distinguished for reasons that similarly apply here. *See, e.g.*, *Jones v. Nationwide Ins. Co.*, No. 98-2108, 2000 WL 1231402, at *4 (M.D. Pa. July 20, 2000) (distinguishing *Garvey* because, *inter alia*, claims manuals were provided for *in camera* inspection and the *Garvey* court had already "found that there had been no evidence of bad faith"); *Kaufman*, 1997 WL 703175, at *2 n.2.

checking its electronic records to ensure its document production is complete," and reassures that it will supplement production if necessary. (*Id.*). In the absence of specific briefing on this issue, Plaintiff has not satisfied its burden of articulating why its requested information is relevant, and/or how the responses provided by Defendant are deficient. *Morrison*, 203 F.R.D. at 196. I deny Plaintiff relief on this issue.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff's Second Motion to Compel Full and Complete Discovery Responses is **GRANTED IN PART** and **DENIED IN PART** as to requests (2) and (3) and **DENIED** as to requests (1) and (4).

An appropriate Order follows.

BY THE COURT:

*Lynne A. Sitarski*

LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE